T.C. Memo. 2010-113

UNITED STATES TAX COURT

JAMES E. AND CATHY MARLOW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18721-08L.                    Filed May 20, 2010.

<u>Mary Michelle Gillum</u> and <u>Robert B. Nadler</u>, for petitioners.

<u>Martha J. Weber</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  Respondent issued a Notice of Determination
Concerning Collection Action(s) Under Section 6320 and/or 6330
(notice of determination) with respect to a final notice of
intent to levy to collect petitioners' unpaid Federal income

taxes assessed for 2004 and 2005.[1]  In response, petitioners timely filed a petition pursuant to section 6330(d) seeking a review of respondent's determinations.

The issues for decision are:

(1) Whether respondent's Appeals officer obtained verification that requirements of any applicable law or administrative procedure were met as required by section 6330(c)(1); specifically whether codes on computerized records verify that the Internal Revenue Service (IRS) properly assessed petitioners' Federal income taxes for 2004 and 2005 without sending petitioners notices of deficiency; petitioners deny signing and filing waivers of restrictions on assessment of the taxes, and there are no waivers signed by petitioners agreeing to the assessments in the IRS records;

(2) if the Appeals officer did not obtain verification that taxes were properly assessed, whether the case should be remanded to the Appeals Office to obtain the purported waivers;

(3) if the case is not remanded, whether respondent has met his burden of proving that petitioners waived the restrictions on assessments and the taxes were validly assessed; and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

(4) if the taxes were properly assessed, whether respondent's settlement officer abused her discretion in denying petitioners' request for an offer-in-compromise (OIC).

## Background

Some of the facts and exhibits have been stipulated and are so found. The stipulation of facts and the supplemental stipulation with attached exhibits are incorporated herein by this reference.

Petitioners James Marlow (Mr. Marlow) and Cathy Marlow (Mrs. Marlow) resided in Tennessee when they filed their petition appealing respondent's notice of determination.

Mr. Marlow has a third grade education, and Mrs. Marlow has a seventh grade education. For many years Mr. Marlow was in the business of removing and hauling waste materials from rural Appalachian coalfields. He owned and operated the trucks used in his business. Mr. Marlow closed his business and retired in September 2007 because of serious health problems. Presently, at age 67, his only income is his Social Security benefit of approximately $1,500 a month.

Petitioners timely filed their joint Federal income tax returns for 2004 and 2005. The returns were prepared by their tax preparer J and J Accountants. Petitioners provided the return preparer with their receipts, canceled checks, and other information. On April 23, 2006, a fire destroyed petitioners'

residence along with all of their furniture, personal property, and business records.

The IRS selected petitioners' 2005 income tax return for examination. On February 15, 2007, Revenue Agent Karen Jackson (RA Jackson) sent petitioners a notice proposing to audit their 2005 return. On March 5, 2007, RA Jackson met with Mr. Marlow at the office of Vicki Mayes (Ms. Mayes), petitioners' agent, for the purpose of auditing petitioners' 2005 return. Mrs. Marlow did not attend the meeting. Although the audit notice was limited to the 2005 return, RA Jackson expanded the audit to include petitioners' 2004 return.

The IRS maintains an electronic version of RA Jackson's workpapers related to her examination of petitioners' 2004 and 2005 returns. The certified copy of the electronic version of RA Jackson's workpapers, provided to the Court on March 30, 2009, includes a Form 4318, Examination Workpapers Index; a Form 9984, Examining Officer's Activity Record; notes; workpapers; lead sheets; and copies of two Forms 4549, Income Tax Examination Changes, showing RA Jackson's changes to petitioners' 2004 and 2005 returns.

RA Jackson's interview summary in her workpapers indicates, inter alia, that petitioners had not used Form 2848, Power of Attorney and Declaration of Representative, to grant Ms. Mayes a power of attorney. RA Jackson asked Ms. Mayes to complete a Form

2848.  Mr. Marlow took the completed Form 2848 to Mrs. Marlow for her signature and was to fax the Form 2848 to RA Jackson's office.  Mr. Marlow provided oral information about his business and business practices during 2005 and stated that he was not aware of any errors on his 2005 return; he and RA Jackson discussed specific items on the 2005 return.  RA Jackson made changes to petitioners' 2004 return by applying the percentages of the adjustments to items for 2005 to the items for 2004.  She gave Mr. Marlow the opportunity to collect information for that year and to schedule another meeting.

RA Jackson's workpaper titled "Marlow 1040 Collectibility" indicates that she considered collectibility for purposes of determining the scope of the audit.  She discussed installment agreement procedures and offer-in-compromise procedures with Mr. Marlow but could not initiate an installment agreement because the time it would take petitioners to pay the liabilities was longer than she was authorized to approve.  After RA Jackson returned to her office following the meeting with Mr. Marlow, she received a telephone call from Mrs. Marlow to discuss possible payment options.  RA Jackson told Mrs. Marlow that she would send the appropriate forms and publications and offered to assist petitioners in preparing the forms.  She suggested that petitioners come to the IRS walk-in office to prepare the forms and gave Mrs. Marlow her office address.

RA Jackson customarily records her examination activities and summaries on a Form 9984.  The Form 9984 in the certified copy of RA Jackson's workpapers shows the following information about her meeting with Mr. Marlow on March 5, 2007:

> Met with the TP had the initial interview, reviewed records, and issued the report.  TP will meet with his wife and return by 03/13/07.  Went over appeal rights and Privacy Act.  TP cannot pay-agreed to send him publications on payment.  Received phone call from TP(W) we discussed payment options and told her I was sending publications.

The Form 9984 indicates that on March 6, 2007, RA Jackson sent publications to petitioners.  There is no entry on RA Jackson's Form 9984 for March 13, 2007, the date Forms 4549 signed by petitioners were to be returned to her.  The only entry on RA Jackson's Form 9984 after the March 6 entry is the last entry dated March 14, 2007, which reads "Closed to GM" without any reference to Forms 4549.

If RA Jackson does not receive a signed Form 4549 after she completes an audit, she either prepares a 30-day letter or telephones the taxpayers and asks if they would like to have a supervisory conference.  RA Jackson normally documents such actions on the Form 9984, and there are no entries on RA Jackson's Form 9984 to indicate she took either action with respect to petitioners' 2004 and 2005 deficiencies.

However, neither are there any entries on the Form 9984 indicating (1) that RA Jackson ever received Forms 4549 from

petitioners, signed or unsigned; (2) that Mr. Marlow and/or Mrs. Marlow signed Forms 4549 agreeing that additional taxes were owed for 2004 and 2005; or (3) that Mr. Marlow or Mrs. Marlow agreed on Forms 4549, Forms 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, or in any other writing to waive the restrictions on the assessments of the deficiencies.

RA Jackson often does not record the receipt of a signed Form 4549 on the Form 9984 because she believes that the signed Form 4549 in the file documents its receipt. Unfortunately, there are no Forms 4549 signed by petitioners in petitioners' file. Moreover, the two Forms 4549 showing changes to petitioners' 2004 and 2005 returns that are included in the certified copy of RA Jackson's workpapers (the workpaper Forms 4549) were not prepared by RA Jackson at the time of the examination of petitioners' 2004 and 2005 returns and are not actual copies of the Forms 4549 she prepared at the conclusion of the examination. This is evidenced by the following facts: First, RA Jackson's signature does not appear anywhere on the workpaper Forms 4549, and her name is typed on the workpaper Forms 4549 where the examining officer's signature should appear; second, RA Jackson prepared the Forms 4549 for 2004 and 2005 and gave them to Mr. Marlow on March 5, 2007, when she concluded her examination, but the workpaper Forms 4549 are dated March 13,

2007; and third (and most telling), the workpaper Forms 4549 could not have been prepared on March 5 or 13, 2007, because the workpaper Forms 4549 are labeled "Form 4549 (Rev. 3-2008)" and, thus, were not in use until March 2008.

RA Jackson closed petitioners' case and sent it to her general manager for review and approval on March 14, 2007. RA Jackson's general manager did not testify at trial, and nothing in the record reveals any action he may have taken regarding the assessments of petitioners' deficiencies for 2004 and 2005.

When a case is closed, the revenue agent's group manager sends the file forward for further processing using a Form 3210, Document Transmittal. If a case is closed as agreed, the case is sent to Central Case Processing (CCP) for assessment. If a case is closed as unagreed, the case is sent to Technical Services.

The IRS maintains a system known as the Examination Returns Control System (ERCS) to control examination inventory and document the audit trail of a case. ERCS status 51 indicates the case is in transit to CCP for assessment. ERCS status 21 indicates that the case is being sent to Technical Services. The ERCS will also show when the tax examiner returns the case file to the revenue agent's group because the Form 4549 is not properly executed. The record does not identify the status of such an action.

Before a case is sent from the revenue agent to CCP, the revenue agent's general manager reviews the file to make sure that signed agreements are in the file, and he will document on Form 9984, either in handwriting or by other notation, that he reviewed the file and submitted it to the CCP group for processing. The Form 9984 does not include a handwritten or other notation from RA Jackson's general manager indicating that he reviewed signed Forms 4549 and submitted the file for processing. Respondent did not produce the Form 3210 sending petitioners' file to CCP for processing.

When an agreed closed case is received in CCP, it is assigned to a tax examiner, who must verify that there is a signed Form 4549 in the case file and check the figures on the documents. If a tax examiner determines that the Form 4549 is not properly executed, CCP returns the case file to the revenue agent's group. No tax examiner testified that he or she verified that the Forms 4549 in the case file were signed by petitioners.

The ERCS report for petitioners' account shows that petitioners' 2004 and 2005 case was initially closed as agreed with status 51 but later changed to status 53 as special interest; at the same time it was updated to status 53, it was also assigned to a tax examiner; and then again 5 days later it went into Status 90, which is closed. The record does not explain what status 53 special interest means.

Respondent did not issue petitioners a notice of deficiency for 2004 or 2005. On April 16, 2007, the IRS assessed additional taxes of $18,913 for 2004 and $16,720 for 2005. The assessed amount of $16,720 for 2005 varies from the 2005 proposed assessment amount of $16,733 listed by RA Jackson on the workpaper Form 4549.

On July 9, 2007, approximately 4 months after the audit examination, respondent sent petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 2004 and 2005. Petitioners then sought assistance from the Legal Aid Society of Middle Tennessee and the Cumberlands. Their counsel, Mary Michelle Gillum (Ms. Gillum), represented them during their CDP hearing.

Mr. Marlow explained to Ms. Gillum that he believed petitioners had paid all taxes owed for 2004 and 2005 but that he could not prove he was entitled to deductions disallowed during the audit because his records had been destroyed in the fire. He hoped that Ms. Gillum could help them compromise the liabilities because they could not afford to pay the assessed taxes.

On July 25, 2007, Ms. Gillum timely submitted on petitioners' behalf a request for a face-to-face CDP hearing challenging their 2004 and 2005 tax liabilities. In the request, petitioners' counsel stated that petitioners had not received statutory notices of deficiency and had not had an opportunity to

discuss the tax liabilities with Appeals and asserted that they qualified for a collection alternative, such as currently not collectible status. In the letter attached to the request, petitioners' counsel reiterated that petitioners had not received any notices of deficiency and that the examiner had made errors and unreasonable assumptions about petitioners' self-employment income and expenses.

Petitioners' case was assigned to Settlement Officer Suzanne Magee (SO Magee). SO Magee informed Ms. Gillum in a letter dated October 3, 2007, that the hearing would be a telephone conference on November 6, 2007. She stated that petitioners were not entitled to a face-to-face hearing because they did not qualify for any collection alternatives. Additionally, she stated that she could not consider the underlying tax liabilities because petitioners had agreed to additional income tax assessments for 2004 and 2005 "by signing Form 870 on March 13, 2007."

On October 30, 2007, SO Magee requested petitioners' 2004 and 2005 tax returns but at that time did not request the administrative files for those years. Subsequently, SO Magee scheduled and held a face-to-face hearing on November 5, 2007. Before she held the CDP hearing, SO Magee reviewed the computer files of petitioners' 2004 and 2005 accounts.

At the CDP hearing Ms. Gillum stated that petitioners would not be challenging the liabilities because they had lost all

their documents in the fire. She said that petitioners did not believe they had signed forms agreeing to additional taxes and requested that SO Magee provide copies of any forms that were signed by petitioners. SO Magee said she did not have copies of the forms but had requested them. She explained that the computer indicated that the petitioners had signed Forms 870 for 2004 and 2005. She said that if she received copies of the agreements to the assessments signed by petitioners, she would forward them to petitioners' counsel. No agreements to the assessments signed by petitioners were ever provided to petitioners' counsel.

At the CDP hearing petitioners' counsel submitted on their behalf (1) Form 656, Offer In Compromise, offering to settle all of petitioners' tax debts for 2004 and 2005 (also including 2006), for $6,232.34,(2) Form 656-A, Application for Waiver of Filing Fee and Payment, (3) Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and (4) financial information supporting items listed on the From 433-A. SO Magee rejected petitioners' OIC.

On June 30, 2008, respondent's Appeals Office issued the notice to petitioners determining that their financial condition rendered the proposed levy action inappropriate and, therefore, the accounts would be placed in currently not collectible status. SO Magee stated in the attachment to the determination notice

that she had verified that the IRS followed all requirements of applicable law and administrative procedure and that the records showed that petitioners had agreed to the additional assessments. She stated that she had verified through transcript analysis that the assessments were made pursuant to section 6201. She stated that she had "verified posting of TC 520 for the correct date on all periods listed on the CDP hearing request per review of computer transcripts which means the levy action has been suspended and the collection period allowed by statute to collect these taxes has been suspended by the appropriate computer codes for the tax periods at issue." SO Magee stated that since petitioners had signed the appropriate documents agreeing with the additional assessments during the audit process, they were barred from raising the tax liabilities issue in the CDP hearing. Although petitioners' counsel had requested copies of the documents during the face-to-face CDP hearing, SO Magee stated in the attachment to the determination notice that petitioners' counsel stated during their conference that petitioners were no longer raising the issue of their underlying liabilities in the hearing. Finally, SO Magee concluded that petitioners' OIC was not an acceptable collection alternative because their reasonable collection potential is greater than the amount offered.

After respondent's Appeals Office issued the notice of determination, SO Magee requested petitioners' administrative files, but she never received them.

The IRS began searching for the administrative files for 2004 and 2005 in late April 2009 or about 3 weeks before the trial; the files, including the Forms 4549, were never found. Petitioners' administrative files for 2004 and 2005 are not old enough to have been destroyed.

Before the trial of this case, RA Jackson asked CCP personnel to search for petitioners' administrative files, but they were unable to find them. However, she did review the electronic case file.

Laura Fairchild (Ms. Fairchild) is an IRS program analyst assigned to the ERCS unit who testified during the trial. She made a special request for petitioners' administrative files for 2004 and 2005 2 weeks before trial but did not receive them. Ms. Fairchild admitted that if the IRS had followed normal procedures it would have petitioners' administrative files with the original Forms 4549 containing the signed waivers agreeing to the additional assessments for 2004 and 2005.

## Discussion

### I. Section 6330 Hearing

Section 6330(a) provides the general rule that no levy may be made on any property or right to property of any taxpayer

unless the Secretary has provided 30 days' advance notice to the taxpayer of the right to an administrative hearing before the levy is carried out. If the taxpayer makes a timely request for an administrative hearing, it is conducted by the IRS Appeals Office before an impartial officer. Sec. 6330(b)(1), (3).

The taxpayer may raise any relevant issue during the hearing, including appropriate spousal defenses and challenges to "the appropriateness of collection actions", and may make "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Sec. 6330(c)(2)(A). The taxpayer also may raise challenges to the existence or amount of the underlying tax liability if he/she did not receive a notice of deficiency for that liability or did not otherwise have an opportunity to dispute it. Sec. 6330(c)(2)(B).

Section 6330(c)(1) requires the Appeals officer to obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Following the hearing, the Appeals Office issues a notice of determination indicating whether the proposed levy may proceed. In making the determination, the Appeals officer must take into consideration the verification obtained under section 6330(c)(1), issues properly raised by the taxpayer, and whether any proposed collection action balances the need for the efficient collection

of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

Under section 6330(d)(1) the taxpayer may petition this Court to review the determination made by the Appeals Office. See sec. 301.6330-1(f)(1), Proced. & Admin. Regs.  This Court has the authority to review an issue arising under the verification requirement of section 6330(c)(1) regardless of whether the taxpayer raised it at the CDP hearing.  Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008).

## II.  Verification

As relevant here, applicable law prohibits the IRS from assessing a deficiency in income tax unless either a notice of deficiency is mailed to the taxpayer at his last known address or the taxpayer has signed a valid waiver of restrictions on assessment of the tax.[2]  Sec. 6213(a), (d); see also Manko v. Commissioner, 126 T.C. 195, 200-201 (2006); Freije v. Commissioner, 125 T.C. 14, 34-37 (2005).

Taxpayers who have filed a joint Federal income tax return under section 6013 are treated separately for purposes of

---

[2]A notice of deficiency provides taxpayers with important procedural safeguards by allowing them 90 days, or 150 days if the notice is addressed to a person outside the United States, to petition this Court for a redetermination of the deficiency as a prerequisite to assessment.  Commissioner v. Shapiro, 424 U.S. 614, 616-617 (1976).

determining the validity of the assessment. Dolan v. Commissioner, 44 T.C. 420 (1965). Before assessing an income tax deficiency with respect to a joint return, the IRS must send a notice of deficiency to both spouses at their last known address (or addresses) or each must sign a waiver of restrictions on assessment of the tax. A notice of deficiency sent to one spouse is ineffective against the other spouse. A waiver signed by one spouse does not apply to the other spouse, and a valid assessment cannot be made against the spouse who did not sign the waiver.

If a tax can be properly assessed without the issuance of a statutory notice of deficiency, the legal and procedural requirements that the Appeals officer is required to verify under section 6330(c)(1) are that a valid assessment was made,[3] that notice and demand was issued, that the liability was not paid, and that the Final Notice of Intent to Levy and Notice of Your Right to a Hearing was issued to the taxpayer. Ron Lykins, Inc. v. Commissioner, 133 T.C. ___, ___ (2009) (slip op. at 17). Where the IRS has assessed additional taxes from deficiencies in the tax reported on joint returns, the Appeals officer also must obtain verification that either valid notices of deficiency were

---

[3]Federal taxes are assessed when they are formally recorded on a record of assessment. Sec. 6203. The summary record of assessment must "provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." Sec. 301.6203-1, Proced. & Admin. Regs.

sent to the taxpayers at their last known address (or addresses) or appropriate waivers were signed by each spouse. See Hoyle v. Commissioner, supra; Manko v. Commissioner, supra at 200-201; Freije v. Commissioner, supra at 34-37. An Appeals officer's determination to proceed with collection of an assessment made without obtaining verification that proper deficiency procedures were followed is an error as a matter of law and is therefore an abuse of discretion. Freije v. Commissioner, supra at 36; Swanson v. Commissioner, 121 T.C. 111, 119 (2003); Kovacevich v. Commissioner, T.C. Memo. 2009-160; Upchurch v. Commissioner, T.C. Memo. 2007-181.

Section 6330 does not require that an Appeals officer rely upon a particular document in order to satisfy the verification requirement. Sec. 6330(c)(1); Craig v. Commissioner, 119 T.C. 252, 262 (2002). Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, contain all the information required under section 301.6203-1, Proced. & Admin. Regs., and generally are sufficient verification that the taxes were assessed and remain unpaid. Jordan v. Commissioner, 134 T.C. __, __ (2010) (slip op. at 21) (citing Nestor v. Commissioner, 118 T.C. 162 (2002)).

However, where additional income taxes over those reported on the taxpayer's return are assessed, Form 4340 and other computerized records, standing alone, are not verification that

the requirements of all applicable law and administrative procedure have been met as required by section 6330(c)(1). Although computerized records may show that the tax was assessed and remains unpaid and that a notice of deficiency was sent or an IRS waiver form has been received, such records do not verify that the notice of deficiency was mailed to the taxpayer's last known address or that the waiver form was not modified and signed by the taxpayer.  In such a situation, if the taxpayer alleges that he did not receive a notice of deficiency and/or denies that he waived the restrictions on assessment, the Appeals officer will be required to do more than consult the computerized records; he must "examine underlying documents".[4]  Hoyle v. Commissioner, supra at 205 n.7; see also, e.g., Casey v. Commissioner, T.C.  Memo. 2009-131 (the Appeals officer examined originals of notices of deficiency mailed to the taxpayer that were in the administrative file which showed USPS markings indicating three notifications to the addressee and concluded that a notice of deficiency had been mailed to the taxpayer and that he had refused to claim it).

---

[4]Chief Counsel Notice CC-2006-019, at 18 (Aug. 18, 2006), states that an Appeals Officer "may rely on a Form 4340 to verify the validity of an assessment, unless the taxpayer can identify an irregularity in the assessment procedure" and acknowledges that, where it is alleged that a notice of deficiency was not mailed, the Appeals officer may be required "to examine underlying documents in addition to the tax transcripts, such as the taxpayer's return, a copy of the notice of deficiency, and the certified mailing list".

RA Jackson audited petitioners' 2004 and 2005 returns and determined that petitioners owed additional tax for each year over the amount they reported on their return. Unless petitioners signed a valid waiver for each year, the IRS could not assess those deficiencies without mailing notices of deficiency to petitioners at their last known address. Respondent concedes that notices of deficiency were not issued to petitioners for the deficiencies assessed for 2004 and 2005. Consequently, the assessments of the deficiencies were not valid if petitioners did not sign valid waivers of restrictions on assessments under section 6213(d), and SO Magee was required to obtain verification that Mr. Marlow and Mrs. Marlow had each signed appropriate waivers.

Before conducting the CDP hearing SO Magee did not request the administrative files for petitioners' 2004 and 2005 tax years. She did order petitioners' 2004 and 2005 income tax returns, which presumably were in the administrative files, but she never received them. At the CDP hearing, petitioners' counsel requested copies of signed waiver forms. SO Magee indicated that she was relying on computer entries showing signed Forms 870 and agreed to provide copies of the signed forms when she obtained them. She later requested the administrative files but never received them. Her determination stated that she verified compliance with the applicable law and administrative

procedure, but it did not explain the basis for the 2004 and 2005 assessments.  The copies of computer files of petitioners' accounts upon which SO Magee relied do not verify that petitioners executed and filed proper waivers required by section 6213(d).

Section 6213(d) unambiguously provides that the waiver must entail "a signed notice in writing filed with the Secretary".  It is important for the Commissioner to keep a written signed waiver of restrictions on assessments on file in his administrative records because the waiver may not have been signed by either spouse or may have been signed by only one spouse filing a joint return; the waiver may have been signed after the statutory period for assessing the tax expired; the waiver may have included only one year when more than one year is at issue; or the waiver executed by the taxpayers may have included conditions that would invalidate the waiver.

We hold that SO McGee did not obtain verification that petitioners signed waivers of the restrictions on assessment of the additional taxes for 2004 and 2005 and, thus, did not obtain verification that all requirements of applicable law and administrative procedure had been met.

We have the discretion to remand a case to the Appeals Office for consideration of a matter that was inadequately considered in the CDP hearing, and there are circumstances in

which a remand is appropriate to clarify a verification under section 6330(c)(1).  See Hoyle v. Commissioner, 131 T.C. 197 (2008).  Written waivers signed by petitioners would be the best evidence that they waived the restrictions on assessment of the additional taxes for 2004 and 2005.  However, SO McGee was unable to find the administrative files that should have included the Forms 4549 purportedly signed by petitioners, and respondent was unable to obtain them before or during the proceedings.  We think it unlikely that the Forms 4549 (or Forms 870) would be found were we to remand this case to the Appeals Office.  In these circumstances, we conclude remand is not necessary and would not be productive.  See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).

## II.  Validity of Assessment

Section 6501(a) generally provides that a valid assessment of income tax liability may not be made more than 3 years after the later of the date the tax return was filed or the due date of the tax return.  Petitioners timely filed their 2004 return on or before April 15, 2005, and filed their 2005 return on or before April 15, 2006.  Respondent assessed the additional taxes for 2004 and 2005 on April 16, 2007, within the 3-year period.  However, section 6213 dictates that an assessment of a tax deficiency is invalid if the Commissioner fails to issue a notice of deficiency or procure and keep on file a signed written waiver

of the restrictions on assessment of the tax deficiency.  Notices of deficiency were not issued to petitioners.  Respondent asserts petitioners signed the original Forms 4549 consenting to the assessment of the additional taxes for 2004 and 2005 but concedes that the IRS has been unable to find the administrative files containing the original Forms 4549.  Petitioners contend that they did not file signed waivers of restrictions on assessment of the additional taxes for 2004 and 2005.

In Hoffman v. Commissioner, 119 T.C. 140, 144-145 (2002), we held that the expiration of the assessment period is a liability challenge subject to de novo review.  In the present case, petitioners challenge the validity of the underlying assessments on the ground they were entered in violation of the normal deficiency procedures.  Thus, we conclude that the validity of petitioners' 2004 and 2005 assessments are subject to a de novo review by this Court.[5]

_____

[5]Respondent argues that pursuant to the Court of Appeals for the Eighth Circuit's decision in Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006), revg. 123 T.C. 85 (2004), this Court may not consider evidence beyond the administrative record. Because sec. 6330 requires a de novo standard of review when the underlying liability is properly in issue, the administrative record rule is not applicable to the validity of the assessment of that liability.  Moreover, the administrative record does not include petitioners' administrative files.  The computerized records that make up the administrative record in this case are insufficient to establish that petitioners waived the restrictions on assessment of the taxes.  Thus, were we limited to the administrative record, we would conclude that respondent has not met his burden of proving that petitioners had signed
(continued...)

The Commissioner has the burden of proving the existence and validity of signed waivers of restrictions on assessments. <u>Cross v. United States</u>, 149 F.3d 1190 (10th Cir. 1998); <u>United States v. McGaughey</u>, 977 F.2d 1067, 1071 (7th Cir. 1992); <u>United States v. Conry</u>, 631 F.2d 599, 600 (9th Cir. 1980). Original Forms 4549 prepared by RA Jackson and signed by both petitioners would be the best evidence. Respondent has been unable to find the administrative files containing the Forms 4549 purportedly signed by petitioners, and the forms have not been provided to the Court. Respondent asserts that in these circumstances he can bypass the best proof and rely on secondary or circumstantial evidence.[6] See Fed. R. Evid. 1004. Respondent contends that secondary evidence maintained by the IRS in the form of several electronic databases and the testimony of witnesses establishes

---

[5](...continued)
valid waivers and further that the period for assessing the taxes has expired. Finally, we think this case falls within the following exception to the administrative record rule recognized by the Court of Appeals in <u>Robinette v. Commissioner</u>, <u>supra</u> at 461 (citing <u>Citizens to Pres. Overton Park v. Volpe</u>, 401 U.S. 402, 420 (1971)): "Of course, where a record created in informal proceedings does not adequately disclose the basis for the agency's decision, then it may be appropriate for the reviewing court to receive evidence concerning what happened during the agency proceedings."

[6]Respondent cites the unpublished opinion of the Court of Appeals for the Tenth Circuit in <u>Cross v. United States</u> listed in the table at 149 F.3d 1190 (10th Cir. 1998), affirming the District Court.

that petitioners executed waivers agreeing to the deficiency assessments for 2004 and 2005.

Rule 1004 of the Federal Rules of Evidence provides that where an original writing is lost or destroyed, secondary evidence of the contents of the writing is admissible unless the proponent lost or destroyed the writings in bad faith.  See Rodriquez v. Commissioner, T.C. Memo. 2009-22; McMahon v. Commissioner, T.C. Memo. 1991-355.  In order to show that a document is lost, a party must show that a diligent but unsuccessful search occurred.  United States v. McGaughey, supra at 1071.  Cases are reviewed on a case-by-case basis.  A reasonable search means that the original document must be obtained by all means possible.  Sylvania Elec. Prods., Inc. v. Flanagan, 352 F.2d 1005 (1st Cir. 1965).

Respondent asserts that petitioners signed the original Forms 4549 prepared by RA Jackson reporting the changes to petitioners' 2004 and 2005 returns, consenting to the assessment of additional taxes and waiving the restrictions on assessment.  SO Magee initially requested petitioners' original 2004 and 2005 income tax returns on October 30, 2007.  She later requested petitioners' administrative files for those years but never received or reviewed them before making her determination.  RA Jackson searched for the administrative files until late April 2009 or about 3 weeks before trial.  Ms. Fairchild also issued a

special search request just 2 weeks before trial.  The IRS still had not found the administrative files the day before trial, and respondent has not notified the Court that the files were ever found.  Petitioners' files were not old enough to have been destroyed.  We therefore conclude that the original Forms 4549 are lost, and respondent may use secondary evidence to prove the contents of the forms.  However, the evidence in this case--IRS computerized records and the testimony of IRS employees--does not convince us that either Mr. Marlow or Mrs. Marlow signed the Forms 4549.[7]

RA Jackson met with Mr. Marlow but never with Mrs. Marlow.

During the examination of petitioners' 2004 and 2005 returns, Mr. Marlow never agreed that he owed the additional 2004 and 2005 taxes.  Rather, RA Jackson assumed Mr. Marlow agreed.  She testified as follows:

---

[7]Again, respondent points to the unpublished opinion in Cross v. United States, supra (see supra note 6), wherein the Court of Appeals for the Tenth Circuit upheld the District Court's finding that the Commissioner's computerized records established that waivers had been signed by the taxpayer.  The Cross case is distinguishable from this case.  In Cross, the taxpayers contested the validity of assessments 9 years after the alleged assessment date and testified that they could not recall whether they had signed a waiver form.  The Court of Appeals indicated that it would have been a much closer case if the taxpayers had testified that they believed they had not signed the waiver form.  By contrast, in the instant case both petitioners testified under oath that they never agreed they owed additional taxes for 2004 and 2005 or signed any forms consenting to the assessments.  They immediately protested the assessments when they received a final notice of intent to levy, which was within 5 months of the examination.

THE COURT:  Did he ever expressly state to you that he agreed or not.

RA Jackson:  Well, he never agreed or did not agree.

MS. GILLUM:  So, it is possible he agreed how you arrived at the assessments but maybe he didn't understand how you determined he owed the amount of money.

RA Jackson:  No, it's my understanding that he agreed to everything * * *.

RA Jackson sent Mr. Marlow a letter on February 15, 2007, proposing to audit his 2005 income tax return.  He only had notice to bring his bank records for the 2005 audit.  During the examination of the 2005 return on March 5, 2007, RA Jackson expanded the scope of the audit to 2004.  She made her proposed 2004 assessment solely from percentage changes she made on the 2005 return.  Mr. Marlow did not have his bank records with him for 2004.  Even if RA Jackson could have assumed that Mr. Marlow agreed to the 2005 assessment, it seems unlikely that she could have concluded that Mr. Marlow agreed to the 2004 assessment.  In any event, it does not mean that petitioners agreed to waive the restrictions on assessment for 2004 and thus relinquish their right to contest the validity of the 2004 assessment.

RA Jackson testified that she did not mail Mrs. Marlow a waiver form but gave Mr. Marlow Forms 4549 on March 5, 2007, to return on March 13.  Mrs. Marlow testified that she did not sign any forms, including a waiver.  While RA Jackson testified that she remembers seeing waivers signed by both petitioners, her

testimony appears to be inconsistent in some respects. For example, she testified that she typically signs her report--the Form 4549--when she issues it and that she issued the Forms 4549, reporting the changes to petitioners' 2004 and 2005 returns, on March 5, 2007. Her examination activities and summaries logged on the Form 9984 confirm that the forms were issued on March 5, 2007. However, the workpaper Forms 4549 are dated March 13, 2007.[8]

Respondent cites two other cases. The first, <u>Furniture Mktg. Specialists, Inc. Defined Benefit Pension Plan v. Commissioner</u>, T.C. Memo. 1993-501, involved a motion for summary judgment that never reached the merits of the case. The second, <u>Huffmeyer v. Commissioner</u>, T.C. Memo. 1987-48, permitted secondary evidence when the Commissioner could not find an original or copy of a consent form extending the limitations period for assessment. In <u>Huffmeyer</u>, although the taxpayers were unable to remember whether they had signed a consent form, their subsequent actions were consistent with a signed consent.

This case is different from <u>Huffmeyer</u> in several respects. First, this case does not involve the execution of a form extending the period of limitations on assessment in section 6501(c)(4). It involves the execution of waiver forms that

----

[8]RA Jackson explained that the date on the workpapers Forms 4549 reflects the last date she ran the program to doublecheck the figures.

deprive petitioners of their right to petition proposed deficiency assessments in a prepayment forum pursuant to section 6213. By using waiver forms whose existence is contested to deprive petitioners of their appeal rights is precisely the harm Congress sought to avoid in enacting section 6213. In both of the cases respondent cites, notices of deficiency were sent to the taxpayers and they were given an opportunity to challenge the deficiencies in this Court without first paying the assessments. Also, section 6501(c)(4) does not require that the written waiver be "filed with the Secretary" as required by section 6123(d).

Second, while RA Jackson attested that she remembered seeing signed forms, Mr. and Mrs. Marlow each provided positive affirmations under oath that they did not agree with the assessments and, most importantly, they did not sign forms agreeing to waive the restrictions on assessment. Further, RA Jackson acknowledged that she did not meet with Mrs. Marlow and was not sure whether Mr. Marlow agreed or disagreed with the assessments at their March 5, 2007, meeting, but assumed he had agreed.

The Commissioner's internal procedures provide that the revenue agent's group manager review the audit files and enter a handwritten or other note on Form 9984 verifying signed waivers before submitting the files to CCP for further processing. RA Jackson's Form 9984 does not include a handwritten or other note

from her group manager indicating that petitioners signed waivers or the date thereof. Further, RA Jackson's Form 9984 includes conditional, anticipatory language written in the future tense stating that Mr. Marlow would show Mrs. Marlow the report and waivers on Forms 4549 and that they should be returned to her by March 13, 2007.

Third, it appears that petitioners' subsequent actions are consistent with their affirmations that they did not agree to the taxes or agree to waive their right to petition this Court. The initial audit took place on March 5, 2007, and was closed on March 14, 2007, just 9 days later. RA Jackson expanded the 2005 audit to include 2004 on March 5, 2007, but petitioners were given notice only of a 2005 audit, and Mr. Marlow's bank records for 2004 were not available on March 5, 2007. At their first real opportunity to dispute the taxes after audit, petitioners raised liability challenges to the 2004 and 2005 assessments in their request for a CDP hearing just 5 months later. Unlike the taxpayers in Huffmeyer v. Commissioner, supra, petitioners had not agreed to prior or subsequent income tax deficiency assessments. Although they remembered signing a form before the audit, it was the power of attorney form for Vicki Mayes. Their power of attorney, as noted by RA Jackson, did not extend to involvement in the audits, and RA Jackson did not share her proposed adjustments with Ms. Mayes. Unlike the Huffmeyers,

petitioners did not engage in a 5-year period of actions consistent with an agreement that they owed the taxes.

Petitioners never agreed that they owed the additional taxes for 2004 and 2005. Mr. Marlow believed that petitioners had accurately reported their taxes on their returns for 2004 and 2005, but he was unable to substantiate deductions disallowed by RA Jackson because his records had been destroyed in the fire that had consumed petitioners' residence and all their personal property. For that reason and because SO Magee had informed them that they would not be allowed to present liability challenges at the CDP hearing, petitioners did not present proof of their claimed erroneous assessments at that hearing. But Ms. Gillum made it clear at that hearing that petitioners did not believe they had signed any waivers, and she specifically requested copies of the Forms 870 because SO McGee had stated that the computerized records showed petitioners had filed such forms waiving the restrictions on assessments of the taxes for 2004 and 2005. Although petitioners did not think they owed the additional taxes, Ms. Gillum focused most of her attention on petitioners' OIC because petitioners could never retrieve the records destroyed in the fire and they were worried about their inability to pay the additional taxes.

We are convinced that petitioners never agreed that they owed the additional taxes. Moreover, respondent has not met his

burden of proving that petitioners agreed to the assessments of the taxes or waived restrictions on the assessments.

In Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214, we remanded the case to the Appeals Office for proper verification of compliance with applicable law. We noted, however:

> By ordering a remand, we do not mean to imply that verification of compliance with applicable law is optional for the appeals officer. On the contrary, it is plainly the intention of Congress that such verification precede a collection determination in every case. The appeals officer certainly may not give verification short shrift in his CDP hearings and then, in the fraction of cases that eventually come before this Court, count on a remand to give him a second chance to fulfill that statutory obligation. Our review of the appeals officer's verification under section 6330(c)(1) sometimes results in a finding, based on the evidence, that a given requirement of law has not been met and that an assessment is invalid. See, e.g., Freije v. Commissioner, 125 T.C. 14, 34-36 (2005). In appropriate circumstances, a lack of evidence in the record (e.g., evidence of a timely assessment) might result not in a remand but in an affirmative finding, based on a failure of proof, that the requirement has not been met. [Id. n.20.]

Here we make the affirmative finding that the assessments of the taxes without first issuing notices of deficiency were invalid because petitioners never waived the restrictions on the assessments.

It is a bit ironic that petitioners could not prove that they did not underreport their taxes because they could not produce destroyed documents they assert would provide the proof, and respondent is unable to prove that the additional taxes were

properly assessed because the waivers purportedly signed by petitioners are lost.

IV. Conclusion

We conclude that SO Magee abused her discretion in determining that the requirements of applicable law or administrative procedure, as provided in section 6330(c)(1), were met in this case.

Although respondent contends that the IRS' internal procedures support the presumptive existence of signed valid waivers by petitioners permitting deficiency assessments of their 2004 and 2005 income taxes and agreeing that they owe such taxes, we find there are some flaws, inconsistencies, and irregularities which lead us to conclude on the basis of this record that the weight of the evidence shows that respondent has failed to carry his burden of proof under these particular facts and circumstances. Accordingly, we hold that respondent's assessments on April 16, 2007, of petitioners' additional income taxes for 2004 and 2005 are invalid.

Having so held, we do not need to consider whether respondent abused his discretion in denying the OIC petitioners submitted.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.